William LOVE, Sr., Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 41A01–9812–CR–446.

Court of Appeals of Indiana.

July 19, 1999.

Rehearing Denied Aug. 31, 1999.

John B. Norris, Hass & Denslaw, Franklin, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, James B. Martin, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant William Love, Sr. appeals his conviction for Battery,[1] a Class B misdemeanor. Specifically, Love argues that the trial court abused its discretion by admitting hearsay which did not qualify as an excited utterance. Moreover, Love contends that without this inadmissible hearsay, there was insufficient evidence to support his conviction.

### FACTS

The facts most favorable to the judgment reveal that on the night of February 13, 1998, Anton Gallagher was driving home past the Love residence when he observed a woman standing in the street, waving her arms and jumping up and down. Gallagher stopped his vehicle and noticed that the woman had blood on her face, hands and clothing. He also observed the figure of a man standing in the doorway to the residence. Gallagher asked the woman to get into his vehicle, but she refused and told him to call 911. Gallagher then immediately drove to his home, six or seven houses away, and called 911, reporting a woman screaming in the street. Gallagher testified that it took him approximately fifteen seconds to reach his house. Record at 56.

Within two minutes of Gallagher's call, Officer Gregory Lengerich arrived at the scene. R. at 52. Gallagher met Officer Lengerich

---

1. IND.CODE § 35–42–2–1.

and immediately directed him to the Love residence. When Officer Lengerich knocked on the door, Love answered with his wife, Kathy, and their son and his girlfriend standing behind. Officer Lengerich observed that Kathy's clothes were in disarray, there was blood on her face, and her wrist was severely red. R. at 29. Kathy was "very worked up" and crying hysterically and, thus, could hardly speak. R. at 21. Upon Officer Lengerich's arrival, Kathy instantly attempted to articulate in rushed speech what had just occurred. R. at 25. While Officer Lengerich had difficulty understanding everything Kathy said, he could decipher bits and pieces such as "he hit me" and "he woke me up" and that her wrist had been grabbed. R. at 25–26, 44. Officer Lengerich testified at trial that the statements that he could unravel were enough for him to comprehend what was going on and "that she had been struck by her husband." R. at 28.

Officer Lengerich then took Kathy out of the house in an attempt to calm her down and obtain a more detailed description of that night's events. When she had calmed down, Officer Lengerich asked Kathy to again explain what had happened. However, he had to ask her to calm down a little more. R. at 26–27. Kathy then told Officer Lengerich that she had been sleeping when Love walked into the bedroom and awakened her by verbally arguing with her. R. at 21. She noted that she believed he was consuming alcohol. Kathy then explained that he struck her with an open hand and grabbed her wrist. R. at 21. Officer Lengerich testified that he did not find any inconsistencies in the bits of information he initially obtained and the clearer description he later obtained. R. at 26.

When Officer Lengerich proceeded to speak with Love, he noticed that Love smelled of alcohol and appeared intoxicated. Love explained, in his version of the events, that he walked to the bedroom and engaged in a verbal argument with Kathy after accusing her of infidelity. Love further stated

that while he did not hit Kathy, he did "wrestle" with her. R. at 31.

After speaking with the son and his girlfriend, Officer Lengerich arrested Love for battery. Following his arrest, Love stated numerous times at the police station that it "definitely was his fault and that he should be going to the Johnson County Jail." R. at 32. The State subsequently charged Love with battery, as a Class B misdemeanor, on May 15, 1998. A bench trial was held on August 11, 1998, at which Officer Lengerich and Gallagher were the only witnesses. Over Love's objection, the trial court allowed Officer Lengerich to testify to Kathy's statement, finding that the excited utterance hearsay exception applied.[2] Love was found guilty as charged and sentenced on September 1, to 180 days, with two days executed and 178 days suspended. At sentencing, Love requested and the trial court granted an order staying the sentence pending appeal. Love now appeals.

## DISCUSSION AND DECISION

### I. Excited Utterance

Love argues that Kathy's statement to Officer Lengerich constituted inadmissible hearsay because it did not fall within the narrow excited utterance exception to the hearsay rule. Specifically, he asserts that Kathy's statement was untrustworthy because it was made in response to Officer Lengerich's questions and because she had time to compose herself and "concoct a false answer." Appellant's Brief at 6. Therefore, he contends that the trial court abused its discretion by admitting such evidence over his objection.

We initially note that the decision to admit evidence is committed to the sound discretion of the trial court. *Porter v. State*, 700 N.E.2d 805, 807 (Ind.Ct.App.1998). We review such evidentiary determinations for abuse of discretion, and reversal is warranted only when the decision is clearly against the logic and effect of the facts and circum-

---

2. In overruling Love's objection, the trial court explained as follows: "it appears to me that there wasn't any break in the time between the uh, very difficult hysterical period of communication to the more calmed down explanation, and it doesn't seem as if from the testimony of the Officer ... there's no inconsistencies there so I'm overruling the objection." R. at 29.

stances before the court. *Taylor v. State,* 697 N.E.2d 51, 52 (Ind.1998); *Porter,* 700 N.E.2d at 807.

 Ind. Evidence Rule 802 provides that hearsay evidence is not admissible unless it fits within one of the exceptions enumerated in Ind. Evidence Rule 803. An excited utterance is such an exception and is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid. R. 803(2). Application of this rule is not mechanical and admissibility should generally be determined on a case-by-case basis. *See Yamobi v. State,* 672 N.E.2d 1344, 1346 (Ind. 1996); *Porter,* 700 N.E.2d at 808. Thus, the heart of the inquiry is whether the statement is inherently reliable because the declarant was incapable of thoughtful reflection. *Yamobi,* 672 N.E.2d at 1346. The statement must be trustworthy under the specific facts of the case at hand. *Id.* The focus is on whether the statement was made while the declarant was under the influence of the excitement engendered by the startling event. *Id.*

In the instant case, we cannot conclude that the trial court abused its discretion when it permitted Officer Lengerich to testify to Kathy's statement. When Officer Lengerich arrived at the scene within minutes after Gallagher's 911 call, Kathy was hysterical and, due to her rushed speech, only able to communicate portions of what had occurred. However, she was able to relate that he had awakened and hit her and that she had been grabbed by the wrist. We note that Love does not challenge the admissibility of these spontaneous statements about the night's altercation as excited utterances.

 On the other hand, Love does challenge the admissibility of Kathy's later statement made outside the house. While this subsequent statement, made in response to

Officer Lengerich's questioning soon after her initial statements,[3] was coherent, the record indicates that he still had to ask Kathy to calm down a little more. Therefore, it was not clearly against the logic and effect of the facts for the trial court to determine that Kathy was still under the stress of excitement from the startling event. *See id.* (declaration does not lack spontaneity simply because it was an answer to police questioning); *see also Brown v. State,* 683 N.E.2d 600, 603 (Ind.Ct.App.1997), *trans. denied* (finding trial court did not abuse its discretion by admitting battery victim's subsequent coherent statement where the record indicated that she remained upset and in shock, and where, while distraught, she had earlier stated "he cut me" and was unable to coherently answer police questions). Moreover, the statement was consistent with Kathy's recent hysterical remarks which, thus, adds to its trustworthiness.

Given the facts of this case, it was reasonable for the court to infer that Kathy was incapable of thoughtful reflection in the short time between her initial statements and her subsequent coherent statement and that she was still under the stress of the battery when she made the challenged statement to Officer Lengerich. Therefore, we conclude that the court did not abuse its discretion when it permitted Officer Lengerich's testimony.

## II. Sufficiency of the Evidence

Love's sufficiency of the evidence challenge is entirely premised on his initial argument that Kathy's statement was inadmissible hearsay. Because we have determined that the trial court did not abuse its discretion by admitting the hearsay, Love's argument must fail. Moreover, we agree with the trial court[4] and find that even without this statement, there was sufficient evidence to support his conviction for battery.

 When reviewing a claim of sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of wit-

---

**3.** Officer Lengerich testified that he questioned Kathy within three to five minutes after receiving notice of the 911 call. R. at 23–24.

**4.** When announcing its judgment, the trial court noted as follows: "[T]here is a good point about

the hearsay evidence but even setting that aside we have a statement about wrestling. We have a statement about an argument, and then we have the demeanor of ... the alleged victim." R. at 70.

nesses. *McKinney v. State*, 686 N.E.2d 844, 845 (Ind.1997). We look only to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* This court will affirm the conviction if evidence of probative value exists from which the trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.*

To convict Love of battery as charged, the State was required to prove that he knowingly or intentionally touched Kathy in a rude, insolent or angry manner. I.C. § 35–42–2–1. Here, Officer Lengerich responded to a 911 call, reporting a woman screaming in the street, and found Kathy in a hysterical state, with disheveled clothing, blood on her face and a severely red wrist. While standing behind Love, she hysterically and spontaneously stated "he woke me up" and "he hit me." Thereafter, Love admitted that they had been in a verbal argument which culminated in him "wrestling" with her. Moreover, he subsequently stated at the police station that it definitely was his fault and that he should be going to jail. R. at 32. Thus, the trial court could have reasonably inferred from this evidence that Love knowingly or intentionally touched Kathy in a rude, insolent or angry manner. We find no error.

Judgment affirmed.

RUCKER, J., and BROOK, J., concur.