Luis David PALACIOS, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 29A02–0908–CR–750.

Court of Appeals of Indiana.

Jan. 26, 2010.

Lawrence D. Newman, Newman & Newman, P.C., Noblesville, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Karl M. Scharnberg, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROWN, Judge.

Luis Palacios appeals his conviction for domestic battery as a class D felony.[1] Palacios raises three issues, which we revise and restate as follows:

I. Whether Palacios was denied the effective assistance of trial counsel; and

II. Whether the evidence is sufficient to sustain Palacios's conviction for domestic battery.

We affirm.

The relevant facts follow. On December 28, 2007, Palacios returned to his house in Noblesville, Indiana, visibly intoxicated. When he arrived home, Palacios's wife Martina Palacios was sitting on a lawn chair in the living room of the house near the front door; Palacios's one-year-old grandson C.P. was sleeping on a bed located in the living room; and Palacios's daughter Brenda and son Luis Palacios, Jr. were in their bedrooms in the house.

Palacios entered the house and was "yelling and stuff," which woke C.P., who began to cry and scream. Transcript at 157. Martina picked up C.P. and sat near the doorway with C.P. in her lap. Palacios struck Martina in the head, knocked her glasses off, and broke them. Martina was screaming, and C.P. started screaming. Luis, Jr. came out of his bedroom because he thought there was a physical fight between Palacios and Martina. Palacios pushed Martina backwards while she was holding C.P. in her hands. Luis, Jr. grabbed Martina to keep her from falling to the floor. Palacios then started throwing some chairs out the door, including the chair that Martina had been sitting on. Palacios and Luis, Jr. got into an argument. Luis, Jr. told Palacios to "just to go

to sleep," and Palacios "kept saying to leave him alone." *Id.* at 135.

Luis, Jr. called for Brenda, who was in her bedroom, to come "calm everybody down." *Id.* at 139. Brenda entered the living room and, because Palacios was yelling and arguing with Luis, Jr., she asked Palacios to "step out of the house" to "cool off." *Id.* After Palacios exited the house and went outside, Brenda took C.P. from Martina and took him to her bedroom. Brenda then went outside to see if Palacios had "calmed down." *Id.* at 141. Brenda asked Palacios what had happened, and Palacios said that he and Luis, Jr. had started to argue. Brenda went "right back inside" the house, and Martina asked Brenda to call the police. *Id.* at 142. Brenda went to her room, retrieved her phone, went back to the kitchen, and called 911.

Noblesville Police Officer Joseph Paul Keith, Jr., and Sergeant David Thoma arrived at the house in response to Brenda's call. Brenda told Officer Keith that Palacios had hit Martina and had left on a blue bicycle. In addition, Brenda told Officer Keith that she heard Palacios "out in the yard yelling," and that Palacios had yelled for "everybody to get out of the house, or he was going to kill them all." *Id.* at 158. Brenda told Officer Keith that she observed Palacios and Luis, Jr. out in the yard "going back and forth verbally." *Id.* Brenda also stated that she observed Palacios throw chairs out the door.

Because Martina did not speak very good English, Brenda translated Martina's statements to Officer Keith. Brenda, translating for Martina, told Officer Keith that Palacios had struck Martina in the head, that he had knocked her glasses off and broke them, and that "it still hurt a little bit." *Id.* at 150, 157. Officer Keith

---

1. Ind.Code § 35–42–2–1.3 (Supp.2006).

checked Martina's head for injuries but was unable to see any redness. Martina also told Officer Keith, with Brenda translating, that Palacios had pushed her backwards while she had C.P. in her hands, and that Luis, Jr. grabbed her to keep her from falling to the floor. Martina also told Officer Keith through Brenda that Palacios started throwing chairs out the door. Finally, Martina told police, with Brenda again providing translation, that Palacios had yelled for everyone to exit the house or that he was "going to kill [ ] all [of them]." *Id.* at 151.

Sergeant Thoma searched the area looking for Palacios and found him in the backyard of a nearby house knocking on a window. Sergeant Thoma asked Palacios what he was doing back there, and Palacios stated that he "was trying to get the Mendoza boys out of bed" so that "they could go beat up [Luis, Jr.]." *Id.* at 159. Palacios was placed under arrest. Palacios then stated that he "was having problems with his son" and that he was "real stressed out about it." *Id.*

On January 22, 2008, the State ultimately charged Palacios with: (1) Count I, domestic battery against Martina as a class D felony based upon Palacios striking Martina causing pain in the presence of a child less than sixteen years old; (2) Count II, battery against Martina Palacios as a class B misdemeanor; and (3) Count III, domestic battery against Martina Palacios as a class D felony based upon Palacios pushing Martina. Prior to trial, the trial court granted the State's motion to dismiss Count III.

At the jury trial, Officer Keith testified regarding the statements made to him by Martina, which were translated to him by Brenda, and Palacios did not object. Following the presentation of evidence, Palacios's counsel moved for a directed verdict. Palacios's counsel argued that "the only

direct evidence ... shows that the contact was accidental. And, so, [Martina] reiterated multiple times, on the record today, that ... the contact was accidental." *Id.* at 188. The trial court denied Palacios's request for a directed verdict. The jury found Palacios guilty as charged of domestic battery as a class D felony and battery as a class B misdemeanor. Palacios's counsel moved for judgment notwithstanding the verdict, and the trial court denied the motion. The trial court vacated the class B misdemeanor. The trial court sentenced Palacios to three years to be executed in the Indiana Department of Correction for domestic battery as a class D felony.

I.

The first issue is whether Palacios was denied the effective assistance of trial counsel. To prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both that his counsel's performance was deficient and that the appellant was prejudiced by the deficient performance. *Ben–Yisrayl v. State,* 729 N.E.2d 102, 106 (Ind.2000) (citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), *reh'g denied ),* *reh'g denied, cert. denied,* 534 U.S. 830, 122 S.Ct. 74, 151 L.Ed.2d 39 (2001). A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *French v. State,* 778 N.E.2d 816, 824 (Ind.2002). To meet the appropriate test for prejudice, the appellant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. Failure to satisfy either

prong will cause the claim to fail. *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006).

There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Stevens v. State*, 770 N.E.2d 739, 746 (Ind. 2002), *reh'g denied, cert. denied*, 540 U.S. 830, 124 S.Ct. 69, 157 L.Ed.2d 56 (2003). Counsel is afforded considerable discretion in choosing strategy and tactics, and these decisions are entitled to deferential review. *Id.* at 746–747. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Id.* at 747. A defense counsel's poor trial strategy or bad tactics do not necessarily amount to ineffective assistance of counsel. *Crain v. State*, 736 N.E.2d 1223, 1239 (Ind.2000). An unsuccessful defense strategy does not always indicate that the strategy was a poor one, nor does it indicate ineffectiveness of counsel. *Fugate v. State*, 608 N.E.2d 1370, 1373 (Ind.1993).

Palacios argues that he was denied the effective assistance of his trial counsel because: (A) his trial counsel failed to object to hearsay evidence presented by the State; and (B) his trial counsel failed to request that the jury be instructed on the definitions of "knowingly" and "intentionally." We will address each argument separately.

## A. *Trial Counsel's Decision Not to Object on Hearsay Grounds*

Palacios argues that his trial counsel was ineffective based upon his failure to object to hearsay evidence presented by the State. Specifically, Palacios argues that Officer Keith's testimony regarding Martina's statements on the night of the incident constituted hearsay, that Palacios's trial counsel was deficient in failing to

object to the hearsay, and that Palacios was prejudiced by his trial counsel's performance because the hearsay was the State's sole evidence in support of domestic battery as a class D felony. The State argues that Officer Keith's testimony was admissible "under several exceptions to the general prohibition on hearsay evidence," including as a present sense impression, an excited utterance, and a statement of existing mental, emotional, or physical condition. Appellee's Brief at 4.

■ In order to prove ineffective assistance due to the failure to object, a defendant must prove that an objection would have been sustained and that he was prejudiced by the failure. *Timberlake v. State*, 690 N.E.2d 243, 259 (Ind.1997), *reh'g denied, cert. denied*, 525 U.S. 1073, 119 S.Ct. 808, 142 L.Ed.2d 668 (1999).

■ Hearsay is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). Hearsay is inadmissible unless admitted pursuant to a recognized exception. Ind. Evidence Rule 802. Here, because part of Officer Keith's testimony contains hearsay (Martina's statements) within hearsay (Brenda's statements), each layer of hearsay must qualify under an exception to the hearsay rule before the testimony at issue may be admitted into evidence. *See Mayberry v. State*, 670 N.E.2d 1262, 1267 (Ind.1996) (citing Ind. Evidence Rule 805), *reh'g denied; see also Amos v. State*, 896 N.E.2d 1163, 1167 (Ind.Ct.App.2008), *trans. denied*. We examine the statements of Martina and Brenda separately.

### 1. *Statements of Martina*

■ As previously mentioned, hearsay is inadmissible unless admitted pursuant to a recognized exception. Ind. Evi-

dence Rule 802. An excited utterance is such an exception and is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid. R. 803(2). Application of this rule is not mechanical and admissibility should generally be determined on a case-by-case basis. *Love v. State,* 714 N.E.2d 698, 701 (Ind.Ct.App. 1999), *reh'g denied.* Thus, the heart of the inquiry is whether the statement is inherently reliable because the declarant was incapable of thoughtful reflection. *Yamobi v. State,* 672 N.E.2d 1344, 1346 (Ind.1996). The statement must be trustworthy under the specific facts of the case at hand. *Id.* The focus is on whether the statement was made while the declarant was under the influence of the excitement engendered by the startling event. *Id.*

■ Here, the record shows that Officer Keith "immediately" went to Palacios's address upon hearing from dispatch of a "violent domestic" and arrived at the house "shortly after" Brenda called 911. Transcript at 156, 158. Martina made several statements to Officer Keith, including that Palacios had struck her in the head, that he had knocked her glasses off and broke them, and that "it still hurt a little bit." *Id.* at 150, 157. Martina also stated that Palacios had pushed her backwards while she had C.P. in her hands, and that Luis, Jr. grabbed her to keep her from falling to the floor. While Martina may not have been crying and was able to answer Officer Keith's questions, the record does indicate that Martina "still hurt a little bit" and that "she didn't seem normal."[2] *Id.* at 150, 157, 161. Palacios has failed to dem-

onstrate that an objection to Officer Keith's testimony upon the basis that his testimony regarding Martina's statements constituted inadmissible hearsay would have been sustained. *See Love,* 714 N.E.2d at 701 (affirming the admission of a victim's statements in response to a police officer's questioning on the basis that the statements fell under the excited utterance exception where police arrived at the scene within minutes after a 911 call, the victim was originally unable to communicate portions of what had occurred, the police took the victim out of the house to calm her down, and after the victim calmed down she gave a coherent statement to police); *see also Brown v. State,* 683 N.E.2d 600, 603 (Ind.Ct.App.1997), *reh'g denied, trans. denied* (affirming admission of a victim's statements in response to a police officer's questions on the basis that the statements fell under the excited utterance exception where the victim gave a subsequent coherent statement); *Yamobi,* 672 N.E.2d at 1346 (noting that "[a] declaration does not lack spontaneity simply because it was an answer to a question").

2. *Statements of Brenda to Officer Keith*

■ We next turn to Brenda's statements. Initially, we observe that a portion of Officer Keith's testimony regarding Brenda's translations of Martina's statements was cumulative. Specifically, Brenda testified on re-direct examination that Martina stated to her where she was hit, that "it still hurt a little bit," that C.P. was in Martina's lap at the time she was hit, and that Palacios had yelled for "every-

---

**2.** We observe that Martina's statement that she "still hurt a little bit" to Brenda and Officer Keith constituted a then existing physical condition, which is one of the exceptions to the hearsay rule, and therefore a proper objection to that testimony on hearsay grounds would not have been sustained. *See* Ind. Evidence Rule 803(3) ("A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain and bodily health)....").

body [to] get [out] of the house or [he] was going to kill [them] all." Transcript at 150–151. To the extent that Officer Keith's testimony was cumulative of Brenda's testimony, we need not determine whether Brenda's translations constituted inadmissible hearsay. *See Montgomery v. State,* 694 N.E.2d 1137, 1140 (Ind.1998) ("Admission of hearsay is not grounds for reversal where it is merely cumulative of other evidence admitted"). However, to the extent that Officer Keith's testimony was not cumulative of Brenda's testimony, we must address whether Officer Keith's testimony regarding Brenda's translations constituted inadmissible hearsay and thus whether a proper objection to Officer Keith's testimony would have been sustained.

▮ Hearsay statements may be admitted into evidence if they qualify as a present sense impression, which is defined as "[a] statement describing or explaining a material event, condition or transaction, made while the declarant was perceiving the event, condition or transaction, or immediately thereafter." Ind. Evidence Rule 803(1). This rule requires that the statement describe or explain the event or condition during or immediately after its occurrence, and the statement must be based upon the declarant's perception of the event. *Amos,* 896 N.E.2d at 1168 (citing *Truax v. State,* 856 N.E.2d 116, 125 (Ind. Ct.App.2006)). In order for Brenda's testimony to fall under the present sense impression, three requirements must be met: (1) it must describe or explain an event; (2) during or immediately after its occurrence; and (3) it must be based on the declarant's perception of the event. *Id.* (citing *Truax,* 856 N.E.2d at 125).

Here, the record reveals that Brenda testified that she was translating for her mother, who did not speak very good English, when Martina gave verbal statements to Officer Keith. Officer Keith testified at trial that he knew that Martina "didn't speak very good English" and "asked Brenda to translate for [him]." Transcript at 157. Brenda testified that Officer Keith was "essentially asking questions to Martina through [Brenda]." *Id.* at 148. Brenda testified that Officer Keith "would ask questions," she would ask Martina, Martina "would speak," and then Brenda "would relay the information back to the officers." *Id.* Brenda's statements were contemporaneous translations of the statements made by Martina. There was little possibility that Brenda's memory would render her translations inaccurate and the circumstances of this case provided little opportunity for fabrication. Further, Brenda testified that she "truthfully translate[d] everything [her] mother said to [Officer Keith]," that she did not "add anything to the story" or "leave anything out from the story." *Id.* at 143–144.

Based upon the record, we conclude that Brenda's translations providing contemporaneous descriptions of the statements made by Martina constituted present sense impressions. *See Amos,* 896 N.E.2d at 1167 (holding that the declarant's statements about what another person had told the declarant during a telephone conversation were admissible under the exception to the hearsay rule for present sense impressions where the declarant perceived the event of the other person's comments through listening and the declarant made the statements about what the other person said immediately after the telephone conversation had ended); *see also United States v. Kramer,* 741 F.Supp. 893, 896 (S.D.Fla.1990) (holding that a translation was admissible as a present sense impression);[3] *United States v. Abell,* 586 F.Supp.

---

**3.** We have observed that federal courts' inter-   pretation of the Federal Rules of Evidence

1414, 1425 (D.Me.1984) (concluding that a translation is exempted from the hearsay rule as a present sense impression and relying upon *United States v. Portsmouth Paving Corp.*, 694 F.2d 312, 323 (4th Cir. 1982) (applying the present sense impressions exception to allow admission of summary of telephone conversation)); John A. Bourdeau, J.D., WHEN IS HEARSAY STATEMENT "PRESENT SENSE IMPRESSION" ADMISSIBLE UNDER RULE 803(1) OF FEDERAL RULES OF EVIDENCE, 165 A.L.R. Fed. 491 (2000) (observing that a translation by a translator has been held to be admissible as a present sense impression).[4] Thus, we conclude that Palacios has failed to demonstrate that an objection to Officer Keith's testimony upon the basis that his testimony regarding Brenda's translations constituted inadmissible hearsay would have been sustained.

### B. *Trial Counsel's Failure to Offer Proposed Instructions*

■ Palacios also argues that his trial counsel was ineffective based upon his failure to request that the jury be instructed on the definitions of "knowingly" and "intentionally." Specifically, Palacios argues that his trial counsel failed to request a final instruction to define "knowingly" or "intentionally" for the jury after having a dialogue with the trial court moving to include an instruction on "accident." Appellant's Brief at 9. Palacios argues that "[b]y observing that the culpability requirements were in serious question in light of the evidence before the jury, yet failing to have those culpability requirements defined, trial counsel's failure to request the defined legal terms of art 'knowingly' and 'intentionally' was unreasonable." *Id.* at 17. Palacios must show that counsel unreasonably failed to request a proper instruction and that he was prejudiced by the failure to request the instruction. *See Potter v. State*, 684 N.E.2d 1127, 1134 (Ind.1997).

■ Generally, a trial court should define the words "knowingly" and "intentionally" for a jury. *See Abercrombie v. State*, 478 N.E.2d 1236, 1239 (Ind.1985). However, in this case Final Instruction No. 6 informed the jury that in order for Palacios to be found guilty of domestic battery as a class D felony, the offense must have been committed with a knowing or intentional state of mind. *See* Appellant's Appendix at 64. In addition, the trial court instructed the jury that the State had to prove each of the elements of the crime beyond a reasonable doubt. Based upon our review of the record, we cannot say

---

may be of some utility because of the similarity between the Indiana Rules of Evidence and the Federal Rules of Evidence. *Truax*, 856 N.E.2d at 125 (citing *Doe v. Shults–Lewis Child and Family Servs., Inc.*, 718 N.E.2d 738, 751 (Ind.1999)).

**4.** We also note that under certain circumstances a number of federal courts have held that statements made by a person providing a translation do not constitute hearsay because the person translating is only a "language conduit." *See United States v. Vidacak*, 553 F.3d 344, 352 (4th Cir.2009) (concluding that statements of an interpreter were "no more than a 'language conduit'" and that a law enforcement officer's testimony regarding the interpreter's statements was not double hearsay); *United States v. Martinez–Gaytan*, 213 F.3d 890, 892 (5th Cir.2000) ("[E]xcept in unusual circumstances, an interpreter is no more than a language conduit and therefore his translation does not create an additional level of hearsay") (citation and internal quotation marks omitted); *United States v. Lopez*, 937 F.2d 716, 724 (2d Cir.1991) (noting that translator was a language conduit); *United States v. Nazemian*, 948 F.2d 522, 525–527 (9th Cir.1991) (finding that the translator was a mere language conduit or the defendant's agent for purposes of conducting conversations with law enforcement), *cert. denied*, 506 U.S. 835, 113 S.Ct. 107, 121 L.Ed.2d 65 (1992).

that Palacios has demonstrated that his trial counsel's failure to propose definitional instructions was so serious an omission as to overcome the presumption of adequate performance. *See Williams v. State,* 771 N.E.2d 70, 73 (Ind.2002) (observing that the trial court gave instructions on the elements of the offenses informing the jury that guilt required a knowing or intentional state of mind and gave instructions that the State had to prove each essential element of the crimes beyond a reasonable doubt, and concluding that trial counsel's failure to submit instructions relating to the culpability of the crimes was not so serious an omission to overcome the presumption of adequate performance); *Potter,* 684 N.E.2d at 1134–1135 (observing that, although the trial court should have instructed the jury on the definitions of "knowingly" and "intentionally," the instructions given informed the jury that the defendant had to commit the crimes with a knowing or intentional state of mind, and therefore the defendant did not show sufficient prejudice for reversal); *see also Abercrombie,* 478 N.E.2d at 1239 (noting that the trial court gave instructions on the offense and should have completed them by adding an instruction reciting the statutory definitions of "knowingly" and "intentionally," but also observing that the instructions as given did inform the jury that guilt must rest upon a knowing or intentional state of mind). Palacios has not demonstrated that he was denied the effective assistance of trial counsel upon this basis.

## II.

The next issue is whether the evidence is sufficient to sustain Palacios's conviction for domestic battery. When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State,* 867 N.E.2d 144, 146 (Ind.2007). We do not assess witness credibility or reweigh the evidence. *Id.* We consider conflicting evidence most favorably to the conviction. *Id.* We affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* (quoting *Jenkins v. State,* 726 N.E.2d 268, 270 (Ind.2000)). It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* at 147. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.*

Palacios argues that the evidence is insufficient to support his conviction for domestic battery as a class D felony. The offense of domestic battery is governed by Ind.Code § 35–42–2–1.3, which provides: "A person who knowingly or intentionally touches an individual who . . . . has a child in common with the other person[ ] in a rude, insolent, or angry manner that results in bodily injury to the person . . . commits domestic battery." The offense "is a Class D felony if the person who committed the offense . . . committed the offense in the physical presence of a child less than sixteen (16) years of age, knowing that the child was present and might be able to see or hear the offense." Ind. Code § 35–42–2–1.3(b).

Here, Palacios argues that the State failed to prove that he "knowingly or intentionally" touched Martina in a rude, insolent, or angry manner. Appellant's Brief at 19. Palacios argues that his "conduct was the result of an accident due to [his] level of intoxication." *Id.* at 21. To the extent that Palacios argues that the evidence shows that his touching Martina was accidental, we observe that the State's prosecutor and Palacios's trial counsel argued the issue of whether Palacios's actions were the result of an accident to the jury, and we will not reweigh the evidence.

*See Drane,* 867 N.E.2d at 146. As previously mentioned, the evidence reveals that Martina told Officer Keith that Palacios had struck her in the head, that he had knocked her glasses off and broke them, and that "it still hurt a little bit." *Id.* at 150, 157. Martina also told Officer Keith that Palacios had pushed her backwards while she had C.P. in her hands, and that Luis, Jr. grabbed her to keep her from falling to the floor. Based upon the record in this case, we conclude that the State presented evidence of probative value from which a reasonable trier of fact could have found Palacios guilty of domestic battery as a class D felony. *See Boyd v. State,* 889 N.E.2d 321, 326 (Ind.Ct.App.2008) (holding that the evidence was sufficient to sustain the defendant's conviction for domestic battery as a class D felony), *trans. denied.*

For the foregoing reasons, we affirm Palacios's conviction for domestic battery as a class D felony.

Affirmed.

MATHIAS, J., concurs.

BARNES, J., concurs in result with separate opinion.

BARNES, Judge, concurring in result with separate opinion.

I respectfully concur in result with the majority's opinion. In arguing that trial counsel was ineffective for failing to object to Martina's and Brenda's statements, Palacios had the burden of establishing that, had trial counsel objected to the statements, the objection would have been sustained. *See Pennycuff v. State,* 745 N.E.2d 804, 812 (Ind.2001) (" 'When an ineffective assistance claim is predicated on counsel's failure to interpose an objection, appellant has the burden to show that a proper objection would have been sustained by the trial court.' " (citation omitted)). Palacios, however, only argues that the statements at issue are hearsay. He makes no attempt to establish that they do not fall into the hearsay exceptions set out in Indiana Evidence Rule 803. In the absence of such an argument, it is my opinion that Palacios has not shown a hearsay objection would have been sustained and, therefore, has not established he received ineffective assistance of counsel.

To hold otherwise puts the burden on the State to analyze all potential exceptions and show that the objection would have not been sustained. This is contrary to our well established standard of review. Because Palacios has not met his burden of proof, I believe it is unnecessary for us to determine the admissibility of the out of court statements on the merits, a determination that to me is not needed and unnecessary to reach the correct legal conclusion.

I specifically reserve judgment on the analysis made by the majority on the hearsay issue. I agree with the majority's conclusion that Palacios has not established ineffective assistance of counsel based on counsel's failure to object to the out of court statements. I also agree with the majority's analysis of Palacios's other ineffective assistance of counsel claim and his insufficient evidence claim. Thus, I, too, vote to affirm Palacios's conviction.