## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Michael D. Gross
Lebanon, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Aundra L. Haralson,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

September 15, 2015

Court of Appeals Case No. 06A01-1501-CR-25

Appeal from the Boone Superior Court

The Honorable Matthew C. Kincaid, Judge

Trial Court Cause No. 06D01-1410-F5-164

**Brown, Judge.**

[1] Aundra L. Haralson appeals his convictions for battery resulting in bodily injury to a pregnant woman as a level 5 felony and criminal confinement as a level 6 felony. Haralson raises one issue which we revise and restate as whether the evidence is sufficient to sustain his convictions. We affirm.

*Facts and Procedural History*

[2] On October 1, 2014, Boone County Sheriff's Deputy John Ford and Zionsville Police Officer Josh Chapman received a dispatch that there had been a domestic incident and that the female was standing by to speak with law enforcement. Officer Chapman arrived at a residence in a mobile home park first and spoke with Brittany Shepherd, who was pregnant. He observed that Shepherd was shaken up, appeared distraught and was crying, had red and puffy eyes from crying and red marks across her neck, and was shaking and unable to answer questions. When Deputy Ford arrived, Shepherd was speaking with Officer Chapman, and Deputy Ford observed that Shepherd was seated on wooden stairs smoking a cigarette, that her hand was shaking, and that she was crying.

[3] Shepherd told the officers that she and Haralson had an argument and started wrestling, she was thrown to the ground, Haralson pinned her down and was on top of her, and that he punched her and placed his hands across her neck. She said that the only way for her to escape was to run into her room, that Haralson closed the door and would not let her leave, and that she grabbed her phone and jumped out the window. At Deputy Ford's request, Shepherd completed a written voluntary statement. Haralson was later arrested.

[4] The following day, Shepherd met with Officer Chapman and, at his request, completed another written voluntary statement which was similar to her first written statement regarding the altercation with Haralson. She also went to the hospital for treatment. The emergency department patient records indicate that Shepherd reported that she had been assaulted by her boyfriend the previous day, she was thrown to the floor, punched or kicked in the right breast, and choked. Shepherd complained primarily of pain over her right breast, and over her right clavicle, of some pain in her throat from being choked, and of upper back and lumbosacral pain.

[5] The State charged Haralson with Count I, battery resulting in bodily injury to a pregnant woman as a level 5 felony; Count II, domestic battery as a class A misdemeanor; Count III, domestic battery as a level 6 felony; Count IV, strangulation as a level 6 felony; Count V, criminal confinement as a level 6 felony; and Count VI, resisting law enforcement as a class A misdemeanor. Prior to trial, at the State's request, the court dismissed Count III.

[6] During Haralson's jury trial, the State presented the testimony of Deputy Ford and Officer Chapman regarding their observations and Shepherd's statements consistent with the foregoing, the testimony of Shepherd, and evidence of Shepherd's injuries and the hospital records. Shepherd stated that she had an argument with Haralson, the argument turned physical, and that Haralson did not place his hands on her although she had told the officers that he had. She testified that the statements she had given to police regarding Haralson holding her on the ground and punching her were untrue, and that "[t]he only thing

physical that happened between the two of us was in the midst of us wrestling each other." Transcript at 65. She testified "I fell myself," that the bruise on her chest was "[f]rom my hoodie," and that "we were both defending ourselves, I think." *Id.* at 66-68. She also stated that law enforcement did not accompany her to the hospital, and when asked if she told the hospital personnel any of the things she had told the police officers about Haralson hitting her, she replied "no." *Id.* at 71. Without objection, Officer Chapman testified that Shepherd told him at the scene that she and Haralson had an argument and started wrestling, that she was thrown down to the ground, that Haralson pinned her down and was on top of her, punched her, and placed his hands across her neck, that she ran into her room and Haralson closed the door and would not let her leave, and that she grabbed her phone and jumped out the window.

[7] The court also admitted, without objection, the patient records of Shepherd's visit to the hospital and photographs of her injuries. The jury found Haralson guilty on Counts I, II, and V and not guilty on Counts IV and VI. The court vacated Count II and sentenced Haralson to six years for his conviction under Count I for battery resulting in bodily injury to a pregnant woman as a level 5 felony, and a concurrent two and one-half years for his conviction under Count V for criminal confinement as a level 6 felony, to run consecutively to a sentence under another cause.

## *Discussion*

[8] The issue is whether the evidence is sufficient to sustain Haralson's convictions. When reviewing claims of insufficiency of the evidence, we do not reweigh the

evidence or judge the credibility of witnesses. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind. 1995), *reh'g denied*. Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.*

[9] Ind. Code § 35-42-2-1 governs the offense of battery and provides in part that "a person who knowingly or intentionally [] touches another person in a rude, insolent, or angry manner . . . commits battery, a Class B misdemeanor" and that the offense is a level 5 felony if "[t]he offense results in bodily injury to a pregnant woman if the person knew of the pregnancy." Ind. Code § 35-42-3-3 provides that "[a] person who knowingly or intentionally confines another person without the other person's consent commits criminal confinement" as a level 6 felony. "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." Ind. Code § 35-41-2-2(a). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b).

[10] Haralson argues that, "[i]n essence, Shepherd repudiated both of the written statements she had made," that "[t]he only evidence before the court was the uncorroborated statements that were for impeachment only," and that "[n]o substantive evidence was before the court sufficient to sustain his convictions." Appellant's Brief at 7. Haralson requests that this court reverse his convictions and remand for a new trial.

[11]　The State maintains that the evidence is sufficient to sustain Haralson's convictions and that Haralson does not dispute that he knew Shepherd was pregnant. It points to Shepherd's statements that she was thrown to the ground, that Haralson pinned her down, punched or kicked her chest and had his hand across her neck, that she tried to leave but Haralson would not let her, and that the only way for her to escape was to jump from her bedroom window. The State also points to evidence that Shepherd had bruising on her jaw and red marks across her neck. With respect to Haralson's argument that the only evidence was statements introduced for impeachment, the State argues that many of Shepherd's statements to police and her statements at the hospital were admitted at trial without objection and that her statements to police were admissible as excited utterances as, when the officers arrived at the residence, Shepherd appeared distraught, her hands were shaking, she was crying, and her eyes were red and puffy.

[12]　With respect to Haralson's assertion that there was no substantive evidence supporting his convictions, we note that the State presented testimony regarding Shepherd's statements to the police officers when they arrived at the scene following a call regarding a domestic incident, and her statements to medical personnel at the hospital the following day. Specifically, Officer Chapman testified that Shepherd stated to him at the scene that she and Haralson had started wrestling, that she was thrown down to the ground, that Haralson pinned her down and was on top of her, punched her, and placed his hands across her neck, and that she ran into her room and Haralson closed the door

and would not let her leave. Haralson did not object or otherwise challenge Officer Chapman's testimony and did not request a limiting admonition. Haralson's claims on appeal are waived. *See Johnson v. State*, 734 N.E.2d 530, 532 (Ind. 2000) (holding that the failure to object at trial waives any claim of error and allows otherwise inadmissible hearsay evidence to be considered for substantive purposes); *Humphrey v. State*, 680 N.E.2d 836, 840 (Ind. 1997) (holding that Ind. Evidence Rule 105 "means what it says and that by failing to request an admonition Humphrey has waived any error based on the absence of an admonition") (citing Ind. Evidence Rule 105 ("If the court admits evidence that is admissible against a party or for a purpose--but not against another party or for another purpose--the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly.")).

[13] Waiver notwithstanding, Shepherd's statements to Officer Chapman following the altercation and later to medical staff when seeking treatment at the hospital constituted substantive evidence. Hearsay is generally inadmissible unless admitted pursuant to a recognized exception. Ind. Evidence Rule 802. An excited utterance is one of those exceptions. *Palacios v. State*, 926 N.E.2d 1026, 1030-1031 (Ind. Ct. App. 2010). An excited utterance is a statement "relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Ind. Evidence Rule 803(2). Application of this rule is not mechanical, and the heart of the inquiry is whether the statement is inherently reliable because the declarant was incapable of thoughtful reflection. *Palacios*, 926 N.E.2d at 1031. The focus is on whether the statement was made

while the declarant was under the influence of the excitement engendered by the startling event. *Id.* The amount of time that has passed between the event and the statement is not dispositive; rather, the issue is whether the declarant was still under the stress of excitement caused by the startling event when the statement was made. *Mathis v. State*, 859 N.E.2d 1275, 1279 (Ind. Ct. App. 2007). When Deputy Ford and Officer Chapman arrived, Shepherd appeared shaken up and distraught, she was crying, her hand was shaking, her eyes were red and puffy from tears, and she was initially unable to answer questions. The statements she made to police were made a short time after the physical altercation with Haralson. Her behavior and comments show that, at the time, she was under the stress of excitement caused by the altercation with Haralson, her statements related to the altercation, and they were admissible under Ind. Evidence Rule 803(2).

[14] Additionally, statements made by persons seeking medical diagnosis or treatment and describing past or present symptoms, pain or sensations and their inception or general cause are admissible under Ind. Evidence Rule 803(4). Even had Haralson objected to the admission of Shepherd's statements to hospital staff for treatment, the statements were admissible under Ind. Evidence Rule 803(4). *See Perry v. State,* 956 N.E.2d 41, 50 (Ind. Ct. App. 2011) (concluding that the statements a victim made to a nurse describing a physical attack and identifying the defendant as the assailant were pertinent to the diagnosis and treatment of the victim's physical injuries and were admissible under Ind. Evidence Rule 803(4)); *see also Nash v. State*, 754 N.E.2d 1021, 1025

(Ind. Ct. App. 2001) (noting that "in cases such as the present one where injury occurs as the result of domestic violence, which may alter the course of diagnosis and treatment, trial courts may properly exercise their discretion in admitting statements regarding identity of the perpetrator"), *trans. denied*.

[15] The evidence before the jury established that Haralson and Shepherd, who was pregnant, had a verbal argument which became physical, that they wrestled, and that Shepherd was thrown to the ground. The evidence further shows that Haralson pinned Shepherd down and was on top of her, punched her, and placed his hands across her neck. After Shepherd ran into her room, Haralson closed the door and would not let her leave. Shepherd jumped out the window, and the police were contacted. The jury heard the testimony of the officers regarding Shepherd's statements and her testimony regarding the altercation, and the witnesses were cross-examined. The patient records, including Shepherd's report of the cause of her injuries, as well as photographic evidence of her injuries, were admitted into evidence and before the jury.

[16] Based upon the record, we conclude that evidence of probative value was presented from which the jury could find beyond a reasonable doubt that Haralson committed the offenses of battery resulting in bodily injury to a pregnant woman as a level 5 felony and criminal confinement as a level 6 felony.

## *Conclusion*

[17] For the foregoing reasons, we affirm Haralson's convictions.

[18]    Affirmed.

Riley, J., and Altice, J., concur.