

FILED

Jan 31 2017, 7:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John (Jack) F. Crawford
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kenneth Brittain,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

January 31, 2017

Court of Appeals Case No.
49A02-1511-CR-1784

Appeal from the Marion Superior
Court

The Honorable Grant Hawkins,
Judge

Trial Court Cause No.
49G05-1304-MR-27966

**Brown, Judge.**

[1] Kenneth Brittain appeals his convictions for murder and attempted murder as a class A felony. Brittain raises three issues which we revise and restate as:

I. Whether the court's admission of deposition testimony violated Brittain's right of confrontation;

II. Whether the court abused its discretion in admitting deposition testimony into evidence; and

III. Whether the court erred by denying Brittain's motion for a mistrial.

We affirm.

## Facts and Procedural History

[2] On April 26, 2013 at approximately 10:31 p.m., Indianapolis Metropolitan Police Department ("IMPD") Officer Joel Anderson responded to a call of shots fired in Indianapolis, Indiana, and upon arriving observed a pickup truck, which was still smoking, driven through the wall of an apartment building. Inside the truck, Officer Anderson observed a male, later identified as Timothy Denny, who had been fatally shot twice in the back of the head, behind the steering wheel. He also observed a female victim lying outside the building on the ground who was alive, bleeding from the face and neck area, and crying, and she identified herself as Victoria Richie. IMPD Officer David Carney, who had also arrived at the scene, spoke with Richie, who said she had been shot, and when asked her who did it she said "it was Bart." Transcript at 144, 149. Richie gave a description of "Bart" as an African-American male with burn marks on his face. *Id.* at 149. Richie was transported to Wishard Hospital.

[3] IMPD Detective Greg Hagan had just "logged on," meaning he "got on [his] radio and marked on duty" when he heard a dispatch about a shooting, and "[s]hortly thereafter" he was asked to check on one of the victims at Wishard Hospital. *Id.* at 172-173. He proceeded to "the shock room wing" at the hospital where he met Officer Aaron Schlesinger, who had followed the ambulance from the scene of the shooting. *Id.* at 173. After receiving an initial rundown from Officer Schlesinger, Detective Hagan went into the shock room and met Richie. Detective Hagan attempted to interview her at the hospital, but she had a difficult time speaking because she had been shot through the mouth. To accommodate her injury, Detective Hagan asked Richie to write down her answers to his questions on a piece of paper. Detective Hagan asked Richie who had shot her and she wrote down "Ken Bart."[1] *Id.* at 183; *see also* State's Exhibit 11.

[4] Police recovered a cell phone later identified as belonging to Brittain from the back seat of the pickup truck. They also examined Richie's cell phone. Police obtained cell tower records, text message records, and Facebook instant message records from the two phones, and they were able to extract the messages and show a pattern of activity between the phones throughout the day on April 26, 2013, ending at about 10:15 p.m.

---

[1] In a statement to police Brittain stated his nickname was "Bart," and that sometimes people referred to him as "Ken Bart." State's Exhibit 135.

On April 28, 2013, IMPD Detective Chuck Benner spoke with a confidential informant with whom he had been associated for at least ten years, and, following the conversation, he drove to a vehicle and recovered a handgun which was located on the front seat and had a magazine next to it. The handgun was identified as a Walther .22 caliber semi-automatic. Police later matched the gun with shell casings recovered from the pickup truck.

On April 30, 2013, the State charged Brittain with Count I, murder; and Count II, attempted murder as a class A felony. On January 23, 2014, Brittain's defense counsel deposed Richie. Richie later died.[2] On July 29, 2015, the State filed a list of witnesses which included Richie by her deposition as a potential witness. At a pretrial conference held on July 31, 2015, the court addressed a motion to exclude Richie's deposition filed by Brittain. Brittain agreed that Richie was "unavailable" for purposes of Ind. Evidence Rule 804, but he argued that its admission would violate his confrontation rights under the Sixth Amendment and Article 1, Section 13 of the Indiana Constitution. After hearing argument, the court denied his request to exclude the deposition. Brittain then asserted that the deposition lacked "indicia of reliability" because Richie "never signed or reviewed the deposition." Transcript at 9. The State

---

[2] The record is unclear as to when and under what circumstances Richie's death occurred. The court first alludes to Richie's death in an entry in the chronological case summary dated July 29, 2015, where it states: "Parties went over statement on what to keep in or take out to get ready for trial on Monday Victim's Deposition is an issue. Defendant [sic] passed away, Hearing set 7/31/15 in the PM on more issues before trial." Appellant's Appendix at 20. A victim impact letter included in Brittain's presentence investigation report indicates that Richie struggled to deal with Denny's death and that, following a continuance in Brittain's prosecution in January 2015, she committed suicide.

responded that the deposition lasted nearly two hours and resulted in 110 pages and argued that "the fact that she was there, she was sworn to an oath to tell the truth and was, had every opportunity . . . to examine her," and that accordingly the deposition was reliable. *Id.* at 10. The court again denied Brittain's motion to exclude.

[7] On September 28, 2015, the court commenced a jury trial. At trial, the State introduced the deposition of Richie. Brittain objected to the admission of the deposition, stating:

> I believe it's a violation under the sixth amendment to the U.S. Constitution and Article I, Section 13 of the Indiana Constitution in regards to the right of Mr. Brittain to confront and cross examine witnesses and have a face-to-face confrontation with the witness and I would incorporate my previous argument and case law from the hearing on July 31st of this year.

*Id.* at 159-160. The court overruled Brittain's objection and allowed the State to read a redacted version of the deposition to the jury.

[8] In her deposition, Richie stated that she had first met up with the person she knew as Ken Bart on Facebook when she posted on the website that she was interested in purchasing drugs in 2013. She testified that, on April 26, 2013, the day of the shooting, she owed Brittain $200 for cocaine and had devised a plan to sell or give Brittain Xanax to pay off the debt and come away with some additional money. She stated that she and Brittain had texted and sent messages using Facebook during that day and that earlier in the day Denny called off the meeting because he had a "bad feeling" about the place. State's

Exhibit 137(a) at 63.  However, Denny and Richie later decided that they "needed the money" and rescheduled the meeting.  *Id.* at 76.

[9]  Richie testified that they picked up Brittain on the evening of April 26, 2013, that Denny was in the driver's seat, she was in the front passenger's seat, and Brittain was in the back seat, and that Brittain counted the Xanax pills and placed them in a bag.  She stated that, afterward, she turned around and observed a gun pointed at her face, that Denny turned, that Brittain shot Denny twice in the back of the head, and that he then shot her in the face.

[10]  During the trial, Brittain objected when the State offered, as State's Exhibit 11, the handwritten answers of Richie that she provided to Detective Hagan in the shock room of the hospital on the grounds that it was inadmissible hearsay testimony.  The court overruled Brittain's objection, relying upon Ind. Evidence Rule 801(d)(1)(C)[3], and admitted the exhibit.  The following morning, the court returned to the subject, stating that it "went through the manual" and noted that the notes could only be admitted under Rule 801(d)(1)(C) "if the witness is present and available for cross examination."  Transcript at 263.  The prosecutor responded that the deposition satisfied that requirement, but the court disagreed.  The court noted that, nevertheless, it believed the notes were "surplusage."  *Id.*  It stated that it could not "unring the bell," but it instructed the State to "think a little bit more before you use that exception when the

---

[3] Ind. Evidence Rule 801(d)(1)(C) provides that a statement is not hearsay if it "is an identification of a person shortly after perceiving the person."

witness himself or herself is not present." *Id.* at 265. Brittain moved for a mistrial, which the court denied.

[11] The jury found Brittain guilty as charged. On October 16, 2015, the court sentenced Brittain to fifty-five years on Count I, and thirty years, with twenty-five years executed and five years suspended, on Count II, to be served consecutively.

## *Discussion*

## I.

[12] The first issue is whether the court's admission of Richie's deposition testimony violated Brittain's right of confrontation. Generally, we review the trial court's ruling on the admission of evidence for an abuse of discretion. *Noojin v. State*, 730 N.E.2d 672, 676 (Ind. 2000). However, here because the issue is one of constitutional law, we review Brittain's claim *de novo*. *See Jones v. State*, 982 N.E.2d 417, 421-422 (Ind. Ct. App. 2013) (constitutional challenges are reviewed *de novo*), *trans. denied*.

[13] The Sixth Amendment to the United States Constitution, made applicable to the States via the Fourteenth Amendment, provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. "A witness's testimony against a defendant is thus inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination." *Lehman v. State*, 926 N.E.2d 35, 39 (Ind. Ct. App. 2010) (citing

*Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004)), *reh'g denied*, *trans. denied*; *see also Davis v. Washington*, 547 U.S. 813, 821-822, 126 S. Ct. 2266 (2006).

[14] Brittain argues that "[e]very trial lawyer and trial judge knows that there is a difference between a 'discovery' deposition and a 'trial' deposition" in that "[t]he motives are entirely different." Appellant's Brief at 18. He contends that a "discovery deposition" is "not intended to be 'confrontational' because the deposing party wishes to encourage the witness to volunteer as much information as he or she can." *Id.* Brittain acknowledges that the Indiana Supreme Court in *Howard v. State*, 853 N.E.2d 461 (Ind. 2006), rejected this difference as creating a confrontation issue, but he asserts that the deposition at issue in that case was "very much like a 'trial' deposition," which distinguishes it from this case. *Id.* at 19. Brittain argues that

> Our Supreme Court's rulings on this issue have put defense counsel in a terrible dilemma with regards to investigation and discovery in a criminal defense: 1) do a discovery deposition without knowing, of course, what the deponent is going to say and probe for information that would be helpful in developing a defense; or 2) ignore the defendant's right for a discovery deposition and hope that for some reason the witness is unavailable at trial.

*Id.* at 20. Brittain further asserts that reading Richie's deposition into evidence violated the Confrontation Clause of the Indiana Constitution.

[15] As Brittain acknowledges, the Indiana Supreme Court squarely addressed this issue in *Howard*. In that case, the Court observed that the Sixth Amendment, as interpreted by *Crawford*, "demands 'unavailability and a prior *opportunity* for cross-examination,'" but that *Crawford* "provides no guidance concerning what 'opportunity' is sufficient to satisfy the demands of the Sixth Amendment." 853 N.E.2d at 468. The defendant in *Howard* made argument "[d]istinguishing between a 'discovery' deposition and a 'trial' deposition," and he insisted "that he had no 'adequate opportunity' to cross-examine the child witness in this case." *Id.*

[16] The Court began its analysis by acknowledging the differences between so-called discovery and trial depositions, in which "[d]uring testimonial depositions, more attention is paid 'to the form of questions . . . [and] to cross-examination . . . . It is not uncommon for key witnesses to be deposed twice by the same party, once for discovery purposes and again for testimonial purposes.'" *Id.* at 469 (quoting Henry H. Perritt, Jr., *Trade Secrets: A Practitioners Guide*, P.L.I. § 10:10.1 (2005)). In response, the Court observed that although the defendant asserted that the deposition was conducted purely for discovery purposes, it "lasted approximately two hours and resulted in ninety-two typewritten pages." *Id.* The Court concluded based thereon that the defendant had not been denied his right of confrontation. *Id.* The Court continued with a second observation, which it characterized as "perhaps more important[]," that "*Crawford* speaks only in terms of the 'opportunity' for adequate cross-

examination" and that "[w]hether, how, and to what extent the opportunity for cross-examination is used is within the control of the defendant." *Id.* at 470.

[17] Similarly, in this case Brittain's counsel deposed Richie for a period of almost two hours, producing a deposition 110 typewritten pages in length. Brittain was afforded the opportunity to cross-examine Richie, and accordingly the court's decision to admit a redacted version of the deposition did not violate Brittain's right of confrontation.

[18] To the extent that Brittain argues admitting Richie's deposition violated his confrontation rights under the Indiana Constitution,[4] we disagree. The Indiana Supreme Court has held that the Indiana right to meet witnesses face-to-face "is secured where the testimony of a witness at a former hearing or trial on the same case is reproduced and admitted, where the defendant either cross-examined such witness or was afforded an opportunity to do so, and the witness cannot be brought to testify at trial again[.]" *Berkman v. State*, 976 N.E.2d 68, 75-76 (Ind. Ct. App. 2012) (quoting *Brady v. State*, 575 N.E.2d 981, 987 (Ind. 1991)), *trans. denied*, *cert. denied*, 134 S. Ct. 155 (2013). Brittain had the opportunity to and did cross-examine Richie, and accordingly we conclude that the court's admission of Richie's deposition did not violate Brittain's confrontation rights under the Indiana Constitution.

---

[4] Article 1, Section 13 of the Indiana Constitution provides, in part: "In all criminal prosecutions, the accused shall have the right . . . to meet the witnesses face to face[.]"

[19] The next issue is whether the court abused its discretion in admitting Richie's deposition testimony into evidence. As noted, we review the trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Roche v. State*, 690 N.E.2d 1115, 1134 (Ind. 1997), *reh'g denied*. We reverse only where the decision is clearly against the logic and effect of the facts and circumstances. *Joyner v. State*, 678 N.E.2d 386, 390 (Ind. 1997), *reh'g denied*. Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission constituted harmless error. *Fox v. State*, 717 N.E.2d 957, 966 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*.

[20] Brittain argues that the "basic, fundamental and rudimentary rules" of Ind. Trial Rule 30 were not followed in the introduction of Richie's deposition, which is a rule in place to ensure that statements are recorded accurately. Appellant's Brief at 14. The State argues that Brittain failed to lodge an objection based upon the lack of certification by the court reporter and that accordingly such issue is waived.

[21] We begin by addressing whether Brittain has waived this argument. A contemporaneous objection at the time the evidence is introduced at trial is required to preserve the issue for appeal, whether or not the appellant has filed a pretrial motion to suppress. *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010), *reh'g denied*; *see also Jackson v. State*, 735 N.E.2d 1146, 1152 (Ind. 2000) ("The failure to make a contemporaneous objection to the admission of evidence at

trial results in waiver of the error on appeal."); *Wagner v. State*, 474 N.E.2d 476, 484 (Ind. 1985) ("When a motion to suppress has been overruled and the evidence sought to be suppressed is later offered at trial, no error will be preserved unless there is an objection at that time."). The purpose of this rule is to allow the trial judge to consider the issue in light of any fresh developments and also to correct any errors. *Brown*, 929 N.E.2d at 207. When a defendant fails to object to allegedly inadmissible evidence the first time it is offered, no error is preserved. *Jenkins v. State*, 627 N.E.2d 789, 797 (Ind. 1993), *reh'g denied*, *cert. denied*, 513 U.S. 812, 115 S. Ct. 64 (1994); *see also Moore v. State*, 669 N.E.2d 733, 742 (Ind. 1996) ("Where a defendant fails to object to the introduction of evidence, makes only a general objection, or objects only on other grounds, the defendant waives the suppression claim."), *reh'g denied*.

[22]     At the July 31, 2015 pretrial conference, Brittain moved to exclude the deposition of Richie as a violation of his right of confrontation, and the court, following argument by the parties, denied his request. He then made an alternative motion asserting that the deposition lacked "indicia of reliability" because Richie "never signed or reviewed the deposition," and the State responded that the deposition was reliable, noting that it lasted nearly two hours and resulted in 110 pages, and further that "she was there, she was sworn to an oath to tell the truth and was, had every opportunity . . . to examine her." Transcript at 9-10. Then, when the State introduced the deposition, Brittain objected to its admission as follows:

I believe it's a violation under the sixth amendment to the U.S. Constitution and Article I, Section 13 of the Indiana Constitution in regards to the right of Mr. Brittain to confront and cross examine witnesses and have a face-to-face confrontation with the witness and I would incorporate my previous argument and case law from the hearing on July 31st of this year.

*Id.* at 159-160. The court overruled Brittain's objection and allowed the State to read a redacted version of the deposition to the jury.

[23] Thus, Brittain's objection at trial was limited to safeguarding his right of confrontation and did not reference any deficiency under the Indiana Trial Rules. Because he did not object at trial based upon Ind. Trial Rule 30, we conclude that Brittain has waived this issue on appeal. *See Washington v. State*, 840 N.E.2d 873, 880 (Ind. Ct. App. 2006) (noting that "a party may not present an argument or issue to an appellate court unless the party raised the same argument or issue before the trial court" and that accordingly the issue is waived (quoting *Crafton v. State*, 821 N.E.2d 907, 912 (Ind. Ct. App. 2005))), *trans. denied*.

### III.

[24] The next issue is whether the court erred by denying Brittain's motion for a mistrial regarding handwritten notes made by Richie during her interview with Detective Hagan which were admitted into evidence. "The granting of a mistrial lies within the sound discretion of the trial court, and we reverse only when an abuse of discretion is clearly shown." *Davis v. State*, 770 N.E.2d 319, 325 (Ind. 2002), *reh'g denied*. "The remedy of mistrial is 'extreme,' *Warren v.*

*State*, 757 N.E.2d 995, 998-999 (Ind. 2001), strong medicine that should be prescribed only when 'no other action can be expected to remedy the situation' at the trial level, *Gambill v. State*, 436 N.E.2d 301, 304 (Ind. 1982)." *Lucio v. State*, 907 N.E.2d 1008, 1010-1011 (Ind. 2009). We afford the trial court such deference on appeal because the trial court is in the best position to evaluate the relevant circumstances of an event and its impact on the jury. *Alvies v. State*, 795 N.E.2d 493, 506 (Ind. Ct. App. 2003), *trans. denied*. To prevail on appeal from the denial of a motion for a mistrial, the appellant must demonstrate the statement or conduct in question was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected. *Id.* We determine the gravity of the peril based upon the probable persuasive effect of the misconduct on the jury's decision rather than upon the degree of impropriety of the conduct. *Id.*

[25] At trial, Brittain objected when the State offered, as State's Exhibit 11, the handwritten answers of Richie that she provided to Detective Hagan on the grounds that it was inadmissible hearsay, and the court overruled the objection, relying upon Ind. Evidence Rule 801(d)(1)(C). The following morning, the court stated that it reviewed the evidence rules and believed that the notes could only be admitted under Rule 801(d)(1)(C) "if the witness is present and available for cross examination." Transcript at 263. The prosecutor responded that the deposition satisfied that requirement, the court disagreed, but in doing so stated that the notes were "surplusage" of the admitted deposition testimony. *Id.* The court observed that it could not "unring the bell," but it instructed the

State in the future to "think a little bit more before you use that exception when the witness himself or herself is not present." *Id.* at 265. Brittain moved for a mistrial, which the court overruled.

[26] Brittain argues that the court should have excluded the notes because "Rule 801 requires that this exception only applies where the declarant testifies at the trial and is subject to cross-examination," that the court ruled the "deposition did not amount to testifying at the trial for the purposes of this rule," but that despite this error the court did not give an admonition to the jury to disregard the exhibit. Appellant's Brief at 25. The State asserts that the court was correct in deciding that the handwritten notes were cumulative.

[27] Recognizing that we may affirm a trial court's decision regarding the admission of evidence if it is sustainable on any basis in the record, *Barker v. State*, 695 N.E.2d 925, 930 (Ind. 1998), *reh'g denied*, we find that the evidence was properly admitted and that accordingly the court did not err in denying Brittain's motion for a mistrial. Hearsay is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). Hearsay is inadmissible unless admitted pursuant to a recognized exception. Ind. Evidence Rule 802. An excited utterance is such an exception and is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Ind. Evidence Rule 803(2). Application of this rule is not mechanical and admissibility should generally be determined on a case-by-case basis. *Palacios v. State*, 926 N.E.2d 1026, 1031

(Ind. Ct. App. 2010) (citing *Love v. State*, 714 N.E.2d 698, 701 (Ind. Ct. App. 1999), *reh'g denied*). Thus, the heart of the inquiry is whether the statement is inherently reliable because the declarant was incapable of thoughtful reflection. *Id.* (citing *Yamobi v. State*, 672 N.E.2d 1344, 1346 (Ind. 1996)). The statement must be trustworthy under the specific facts of the case at hand. *Id.* The focus is on whether the statement was made while the declarant was under the influence of the excitement engendered by the startling event. *Id.* The amount of time that has passed between the event and the statement is not dispositive; rather, the issue is whether the declarant was still under the stress of excitement caused by the startling event when the statement was made. *Mathis v. State*, 859 N.E.2d 1275, 1279 (Ind. Ct. App. 2007).

[28] Here, IMPD Detective Greg Hagan had just "logged on," meaning he "got on [his] radio and marked on duty" when he heard a dispatch about a shooting, and "[s]hortly thereafter" he was asked to check on one of the victims at Wishard Hospital. Transcript at 172-173. He proceeded to the hospital's "shock room wing" where he met Officer Aaron Schlesinger, who had followed the ambulance from the scene of the shooting. *Id.* at 173. After receiving an initial rundown from Officer Schlesinger, Detective Hagan went into the shock room and met Richie. Detective Hagan attempted to interview her but she had a difficult time speaking because she had been shot through the mouth. To accommodate her injury, Detective Hagan asked Richie to write down her answers to his questions on a piece of paper. Detective Hagan asked Richie who had shot her and she wrote down "Ken Bart." *Id.* at 183; *see also* State's

Exhibit 11. Under these circumstances, in which Richie had just been brought to the hospital after being shot through the mouth, her vocalization was impaired, and she was situated in the shock room, we believe that she was still under the stress of excitement caused by the shooting and that she was accordingly incapable of thoughtful reflection, and we conclude that State's Exhibit 11 was admissible as an excited utterance. The court did not abuse its discretion when it admitted the exhibit, and it did not err in denying Brittain's motion for a mistrial.

[29]  Moreover, we find that even if the court abused its discretion when it admitted the handwritten notes, any alleged error is harmless. Errors in the admission or exclusion of evidence are to be disregarded as harmless error unless they affect the substantial rights of the party. *Lewis v. State*, 34 N.E.3d 240, 248 (Ind. 2015). To determine whether an error in the introduction of evidence affected the party's substantial rights, we assess the probable impact of that evidence upon the jury. *Id.* The jury in this case heard testimony that at the scene of the shooting Richie told Officer Carney that "it was Bart" who shot her and that she described "Bart" as an African-American male with burn marks on his face. Transcript at 144, 149. This evidence was admitted without objection. Thus, the handwritten notes are largely cumulative of her statement at the scene of the shooting. Thus, we conclude that any alleged error is harmless. *See Hennings v. State*, 532 N.E.2d 614, 615 (Ind.1989) (holding that any error in admitting a recording of the victim's highly emotional call made immediately after rape was cumulative of the victim's testimony and therefore harmless); *Johnson v. State*,

699 N.E.2d 746, 749 (Ind. Ct. App. 1998) (holding that the error in admitting a recording was harmless because the recording was cumulative of prior testimony).

## Conclusion

[30] For the foregoing reasons, we affirm Brittain's convictions.

[31] Affirmed.

Robb, J., and Mathias, J., concur.