# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 12 2017, 9:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Evan K. Hammond
Grant County Public Defender
Marion, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Melanie Marie Thinnes,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | April 12, 2017<br><br>Court of Appeals Case No.<br>27A02-1606-CR-1305<br><br>Appeal from the Grant Superior Court<br><br>The Honorable Jeffrey D. Todd, Judge<br><br>Trial Court Cause No.<br>27D01-1410-FB-48 |

**Pyle, Judge.**

# Statement of the Case

[1] Melanie Thinnes ("Thinnes") appeals her convictions by jury of Class B felony causing death when operating a motor vehicle with a schedule I or II controlled substance in the blood;[1] Class C felony criminal recklessness resulting in serious bodily injury;[2] Class D felony causing bodily injury while operating a motor vehicle while intoxicated with a Schedule I or II controlled substance;[3] two counts of Class D felony possession of a controlled substance;[4] and Class A misdemeanor possession of marijuana,[5] as well as the sentence imposed thereon. Thinnes specifically argues that the trial court abused its discretion in denying her motion for a mistrial and in sentencing her. Concluding that the witness' testimony did not place Thinnes in a position of grave peril and that Thinnes' sentence was not against the logic and effect of the facts and circumstances before the trial court, we affirm the trial court's judgment and sentence.

[2] We affirm.

---

[1] IND. CODE § 9-30-5-5

[2] IND. CODE § 35-42-2-2.

[3] I.C. § 9-30-5-4.

[4] I.C. § 35-48-4-7.

[5] I.C. § 35-48-4-11.

# Issues

1. Whether the trial court abused its discretion in denying Thinnes' motion for a mistrial.

2. Whether the trial court abused its discretion in sentencing her.

# Facts

At approximately 7:30 a.m. on June 27, 2014, Robert Sater ("Sater") was driving northbound on 400 East near Gas City when he noticed that twenty-two-year-old Thinnes, who was approaching him in the southbound lane in a Jeep, appeared to be falling asleep. As Thinnes' Jeep crossed the centerline into his lane, Sater swerved and drove off the road into the front yard of a nearby home. Chelsea Blackburn ("Blackburn") and her boyfriend, Derek Comer ("Comer"), had been driving a short distance behind Sater. Blackburn was driving, and Comer was in the front passenger seat. After Sater swerved off the road, he looked up at his rearview mirror and saw Thinnes' Jeep collide with Blackburn's van. Comer, whose legs were crushed, was unable to get out of the van. Rescue workers were able to extricate him; however, he died at the scene. Blackburn was taken to the hospital with a broken ankle and dislocated wrist.

The impact of the collision sent Thinnes' Jeep into a culvert at the side of the road. Sater, who smelled gasoline in the area of the Jeep, yelled at Thinnes to get out of the car. Thinnes crawled out of the Jeep's window and pulled herself up to the roof of the car. She was crying and stated that this crash was just like a previous crash in which she had been involved.

[5]     Thinnes was taken to the hospital for a blood draw, and the police interviewed her later that day.  During the interview, Thinnes mentioned the prior crash in which she had been involved.  Someone had died in the crash, but no charges had ever been filed against Thinnes.  Also during the interview, Thinnes explained that she had been up all night with a friend the previous night and had taken an Adderall at approximately 3:00 a.m. to help her stay awake.  Thinnes did not have a prescription for Adderall.  She also admitted that she had smoked marijuana at some point in the recent past.  Thinnes' blood tests were positive for THC and THC carboxy, the active ingredient in marijuana and its metabolite, and amphetamines.  A search of her car revealed a partially burned marijuana cigarette as well as an amphetamine tablet and a Xanax tablet together in a small plastic bag.

[6]     Four months after the accident in October 2016, the State charged Thinnes with:  (1) Class B felony causing death when operating a motor vehicle with a schedule I or II controlled substance in the blood for causing Comer's death; (2) Class C felony criminal recklessness resulting in serious bodily injury for injuring Blackburn's ankle and/or wrist; (3) Class D felony causing serious bodily injury when operating a vehicle while intoxicated with a schedule I or II controlled substance for injuring Blackburn's ankle and/or wrist; (4-5) two counts of Class D felony possession of a controlled substance for possessing the amphetamine and Xanax tablets; and (6) Class A misdemeanor possession of marijuana for possessing the partially burned marijuana cigarette.

[7] Before trial, Thinnes filed a motion in limine wherein she asked the trial court to order counsel and all witnesses to refrain from mentioning her prior car accident. The trial court granted the motion. In order to comply with the trial court's order, the State told its first witness, Sater, not to mention the prior accident. However, during direct examination, while Sater was describing Thinnes' appearance and actions immediately after the accident, Sater mentioned that Thinnes said, "this is the same thing that happened . . . ." (Tr. 60). The State promptly interrupted Sater and clarified that it only wanted to know about Thinnes' appearance after the accident. Outside the presence of the jury, Thinnes moved for a mistrial based upon the violation of the motion in limine. Specifically, Thinnes argued that "the words 'this same thing happened,' . . . would suggest to the jury that . . . she had a significant collision before. . . ." (Tr. 63). The State responded that Sater never mentioned a crash, and even if the jury made an inference that there as a prior crash, Sater never mentioned that someone else had died. The trial court took the matter under advisement, and after a short recess, denied Thinnes' motion. The trial court specifically explained that there "was no elaboration on 'thing,' or even if it [had] happened to . . . [Thinnes]." (Tr. 66). At Thinnes' request, the trial court admonished the jury to disregard the last answer given by the witness.

[8] The evidence presented at trial revealed that Blackburn, who was Thinnes' cousin, had had plates and screws placed in her ankle and that her ankle was still swollen two years after the accident. In addition, medical testimony revealed that a compound fracture in Comer's thigh bone tore the blood vessels

behind his knee and caused him to bleed to death. Specifically, the Grant County Coroner testified that Comer "bled out from injuries that he received during the collision." (Tr. 121). The jury convicted Thinnes of all charges.

[9] At the sentencing hearing, Thinnes testified that she had an almost one-year-old son and that she took care of her father for four to eight hours per day. Thinnes also testified that she had completed substance abuse treatment in Florida after the accident. According to Thinnes, the treatment program had changed her life. However, she had not followed the treatment program recommendations after she returned to Indiana.

[10] At the end of the sentencing hearing, the trial court pointed out that in her police interview shortly after the accident, Thinnes was "haughty, disdainful, offhanded, and [had no concern for [anything that was] important or serious." (Tr. 396). The trial court further doubted that Thinnes had changed because she had not followed through with recommendations after being discharged from the Florida treatment program. The trial court explained that if it could pick a sentence "based upon emotion only and not the law," it would give Thinnes the maximum sentence because her actions resulted in the death of another human being. (Tr. 397). However, the trial court pointed out that it would not so sentence her because her actions were not the worst of the worst. Specifically, the trial court explained that it found the following mitigating circumstances: (1) Thinnes did not have a juvenile or criminal history; (2) a long period of imprisonment would be a significant hardship on her young child and father; and (3) Thinnes was young and more likely to learn from her bad

choices. The court further found as an aggravating circumstance that the imposition of a sentence less than the advisory sentence would depreciate the seriousness of the crimes.

[11] The trial court also explained that because of the aggravating circumstance, and despite the mitigating circumstances, the court would sentence Thinnes to the advisory sentence on each count. The court therefore sentenced Thinnes as follows: (1) ten years with two years suspended for the Class B felony conviction; (2) four years for the Class C felony conviction; (3) one and one-half years for each of the three Class D felony convictions; and (4) one year for the Class A misdemeanor conviction. The trial court further ordered all of the sentences to run concurrently to each other for a total executed sentence of eight (8) years in the Department of Correction. In addition, the trial court noted that it would recommend that Thinnes be sentenced to a "purposeful incarceration." (Tr. 399). The trial court explained that this was a program in the Department of Correction that would provide her with addiction and mental health treatment. The trial court further explained that it would consider modifying her sentence once she had successfully completed the program and been incarcerated for six years. Thinnes now appeals her convictions and sentence.

# Decision

[12] Thinnes argues that the trial court abused its discretion in denying her motion for a mistrial and in sentencing her. We address each of her contentions in turn.

## 1. Denial of Mistrial

[13] Thinnes first argues that the trial court abused its discretion by denying her motion for a mistrial. The grant or denial of a mistrial lies within the sound discretion of the trial court. *Brittain v. State*, 68 N.E.3d 611, 619 (Ind. Ct. App. 2017). We reverse a trial court only when an abuse of discretion is clearly shown. *Id.* We afford the trial court such deference on appeal because the trial court is in the best position to evaluate the relevant circumstances of an event and its impact on the jury. *Id.* at 620. The declaration of a mistrial is an extreme action that is warranted only when no other action can be expected to remedy the situation. *Kemper v. State*, 35 N.E.3d 306, 309 (Ind. Ct. App. 2015), *trans. denied*.

[14] To prevail on appeal from the denial of a motion for a mistrial, the appellant must demonstrate that the statement or conduct in question was so prejudicial and inflammatory that she was placed in a position of grave peril to which she should not have been subjected. *Brittain*, 68 N.E.3d at 620. We determine the gravity of the peril based upon the probable persuasive effect of the misconduct on the jury's decision rather than upon the degree of impropriety of the conduct. *Id.*

[15] Even if evidence of uncharged misconduct is heard by the jury, a prompt admonishment to the jury to disregard the improper testimony is usually enough to support the denial of a motion for mistrial. *Greenlee v. State*, 655 N.E.2d 488, 490 (Ind. 1995). To determine if testimony of prior uncharged

misconduct should warrant a new trial, the circumstances must be analyzed as to whether the evidence was intentionally injected or came in inadvertently and as to what degree the defendant was subjected to improper speculation by the jury. *Id.*

[16] At trial, Sater testified that after the accident, while Thinnes was sitting on the roof of her car in the gulley, she stated, "this is the same thing that happened . . . ." (Tr. 60). The trial court immediately admonished the jury to disregard the last answer given by Sater. This admonishment, together with the strong presumption that juries follow courts' instructions and that an admonition cures any error, supports the trial court's denial of Thinnes' motion. *See Lucio v. State*, 907 N.E.2d 1008, 1011 (Ind. 2009).

[17] Further, the parties agree that this was inadvertent testimony by a civilian witness, that no other witness provided any evidence regarding Thinnes' statement during the three-day trial, and that the State made absolutely no reference to this statement in its closing statement to the jury or at any other time during the trial. We agree with the State that the "statement was isolated, brief, and vague, and that the State did not emphasize or exploit it in any way." (State's Br. 10). Based on these facts and circumstances Thinnes was not placed in a position of grave peril, and the trial court did abuse its discretion in denying her motion for a mistrial. *See Lucio*, 907 N.E.2d at 1011.

## 2. Sentence

[18] Thinnes also argues that the trial court abused its discretion in sentencing her.[6] Sentencing decisions rest within the sound discretion of the trial court. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007). So long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Id.* An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* at 491. A trial court may abuse its discretion in a number of ways, including: (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that includes aggravating and mitigating factors that are unsupported by the record; (3) entering a sentencing statement that omits reasons that are clearly supported by the record, or (4) entering a sentencing statement that includes reasons that are improper as a matter of law. *Id.* at 490-91.

[19] Thinnes alleges none of the possible abuses of discretion that are set forth in *Anglemyer*. Instead she argues that she "should have been sentenced to the minimum sentence based on the court identified mitigating factors." (Thinnes' Br. 15). According to Thinnes, "[i]t is clear from the record that more mitigating factors were identified; however, Thinnes received a sentence above

---

[6] We note that despite stating the issue in her appellate brief as whether her sentence is inappropriate, Thinnes does not cite to Indiana Appellate Rule 7(B), which provides that this Court may revise a sentence authorized by statute if we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. In addition, Thinnes presents no argument whatsoever addressing either the nature of her offense or her character. Thinnes has, therefore, waived any argument that her sentence is inappropriate. *See Williams v. State*, 891 N.E.2d 621, 633 (Ind. Ct. App. 2008).

the minimum." (Thinnes' Br. 15). This is essentially an argument that the trial court improperly weighed the aggravating and mitigating factors. However, *Anglemyer* makes clear that, when imposing a sentence, a trial court "no longer has any obligation to 'weigh' aggravating and mitigating factors against each other" and thus "a trial court can not now be said to have abused its discretion in failing to 'properly weigh' such factors." *Id.* at 491. Thinnes' argument therefore fails. The trial court did not abuse its discretion in sentencing her.

[20] Affirmed.

Baker, J., and Mathias, J., concur.