## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 06 2020, 8:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Andrew Bernlohr
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Josiah Swinney
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Brent Porter,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff,*

April 6, 2020

Court of Appeals Case No.
19A-CR-1303

Appeal from the Marion Superior
Court

The Honorable Barbara Cook
Crawford, Judge

Trial Court Cause No.
49G01-1811-F3-39582

**Robb, Judge.**

# Case Summary and Issues

[1] Following a jury trial, Brent Porter was convicted of kidnapping committed by using a vehicle and kidnapping causing bodily injury, both Level 5 felonies, and domestic battery, a Class A misdemeanor. He was sentenced to three years for kidnapping committed by using a vehicle, one and one-half years for kidnapping causing bodily injury, and one year for domestic battery, all to be served concurrently. Porter appeals his convictions, raising two issues for our review: 1) whether the trial court abused its discretion when it denied Porter's motion for mistrial following an objectionable statement during trial testimony; and 2) whether the entry of judgment of conviction and sentence for both counts of kidnapping violate Indiana's prohibition against double jeopardy. Concluding the trial court did not abuse its discretion in denying a mistrial but that the two convictions for kidnapping do constitute double jeopardy, we affirm in part, reverse in part, and remand.

# Facts and Procedural History

[2] Porter and Candace Wright were involved in a relationship and lived together as of November 2018. On November 7, Wright decided to end the relationship and went to a relative's house to talk. In the early morning hours of November 8, she made her way to the apartment of her cousin, Nicki Horton. Wright and Horton left the apartment to pick up a friend of Horton's, with Wright driving Horton's truck. When they returned to Horton's apartment, Wright saw the headlights of a car nearby, but "it didn't dawn on [her] to know who it was."

Transcript, Volume II at 94. All three occupants had to exit the truck through the passenger door because the driver's door was not functional. Horton and her friend got out and headed toward the apartment. As Wright exited the truck, Porter ran up to her and struck her from behind. Wright explained, "he hit me so hard that I fell, and my knee fractured and was out. Pushed all the way out." *Id.* at 95. The fall also caused her mouth and nose to bleed. Horton saw the altercation and yelled at Porter, who told her to shut up. Porter then dragged Wright by her hair to his car. Wright was holding on to the doorframe because she did not want to get in, but Porter kicked and pushed her into the back seat as she tried to resist. Porter drove away, hitting Wright in the face with his fist as he drove. Wright was in and out of consciousness until they eventually arrived at the apartment they shared. Wright's left eye was swollen shut and she was unable to walk by herself. Porter assisted her up the stairs to their apartment and into bed. Horton did not call the police after Porter drove away with Wright, but she did call Wright's daughter to apprise her of what had happened.

[3]     While Wright was in bed, "hurtin' bad[,]" she heard a knock at the door. *Id.* at 100. Wright was unable to get out of bed and Porter did not answer, but Wright was able to hear the voices of her daughter and another cousin outside the apartment. Wright's daughter called the police when no one came to the door and neither Wright nor Porter answered their phone. When police arrived, they repeatedly knocked and announced their presence but again Porter did not answer, so the police breached the door and entered the apartment.

Porter was arrested and Wright was transported to the hospital by ambulance. Wright suffered a fracture to her left kneecap.

[4] The State charged Porter with kidnapping with serious bodily injury, a Level 3 felony; battery resulting in serious bodily injury, a Level 5 felony; kidnapping committed by using a vehicle and kidnapping causing bodily injury, both Level 5 felonies; and domestic battery as a Class A misdemeanor. With respect to the domestic battery charge, the State also alleged that Porter had a prior battery conviction which, if proved, would elevate the Class A misdemeanor to a Level 6 felony. At Porter's jury trial, Horton testified about what she saw the morning of November 8. When asked by the State if she called the police after Porter dragged Wright away, Horton said, "No, at the time . . . I was intoxicated, and I don't know exactly what happened between them right there. They had altercations every now and then and I –" *Id.* at 121. Defense counsel interrupted and objected on Evidence Rule 404(b) grounds. The trial court sustained the objection, but then defense counsel asked to approach the bench and informed the court that he would be moving for a mistrial. The court sent the jury back to the jury room and heard argument on the motion:

> [Defense counsel]: [T]he objection was to 404B, prior bad act evidence. The testimony did come out before the Court made its ruling. Since the prior bad acts are not before the jury, it's also more prejudicial than probative in this case. A limiting instruction or striking from the record –
>
> The Court: I'm quite frankly she was talking so fast, I didn't even catch anything that she said.

[Defense counsel]:  We believe that some of the jurors at least may have caught it.  And we don't believe that a limiting instruction or striking the record can unring that bell in this case.

* * *

[The State]:  The State's position that I believe what Miss Horton said is (inaudible).  But it didn't go any further than that.  I think that an admonishment would be sufficient in this case. . . .

The Court:  What was your original question?

[The State]:  My question was, Why didn't she call the police?

* * *

[Defense Counsel]:  . . . I don't think [the State's] question called for that [answer].  So, we're not . . . saying that is the state in any way, shape or form.  Just the response to that was they have been in altercation[s] in the past.  And we are concerned that that evidence in front of the jury leads them to speculate that there have been prior bad acts that my client has participated in.

The Court:  . . . The Court at this time is going to deny your request for Mistrial.  [F]irst of all the question that was asked did not – was not designed to elicit that specific response.  And . . . she did not complete her answer.  So, and she . . . talks fast so I'm not sure most of the jurors even caught it.  But even those that did, I don't think that it was anything that would prejudice [Porter] that much.  I am willing to give a – admonish the jury to disregard that portion of her response. . . .

*Id.* at 122-23. When the jury returned to the courtroom, the trial court gave them the following admonishment:

> All right, ladies and gentlemen, the Court has sustained the Defendant's objection with regard to that portion of the witnesses' [sic] response where she said they got into altercations from time to time. You are to disregard that portion of her response. And do not consider it as part of your deliberation. . . . That will be stricken from the record.

*Id.* at 124.

[5] The jury found Porter not guilty of kidnapping as a Level 3 felony and battery as a Level 5 felony; it found him guilty of the remaining charges. The State then dismissed part two of the domestic battery information. The trial court entered judgment of conviction for two Level 5 kidnapping convictions and domestic battery and sentenced Porter to three years for kidnapping committed by using a vehicle, one and one-half years for kidnapping causing bodily injury, and one year for domestic battery, all to be served concurrently through community corrections on home detention. Porter now appeals.

# Discussion and Decision

## I. Motion for Mistrial

[6] Porter contends that the trial court erred in denying his motion for mistrial after Horton made a statement referencing previous altercations between Porter and Wright in violation of Indiana Evidence Rule 404(b). He claims he suffered

prejudice as a result of the comment that was not cured by the trial court's admonishment because a "significant, serious, and appropriate connotation is assigned to the concept of being a domestic batterer [and i]t cannot be known how significant, and damning, the inferences drawn [by the jury] were." Brief of Defendant-Appellant at 15.

[7] The grant or denial of a motion for mistrial rests within the sound discretion of the trial court and we therefore review the trial court's decision only for an abuse of discretion. *Brittain v. State*, 68 N.E.3d 611, 619 (Ind. Ct. App. 2017), *trans. denied*. The trial court is entitled to great deference on appeal because the trial court is in the best position to evaluate the relevant circumstances of a given event and its probable impact on the jury. *Id.* at 620. To prevail on appeal from the denial of a motion for mistrial, a defendant must demonstrate that the statement in question was so prejudicial that he was placed in a position of grave peril. *Id.* The gravity of peril is measured by the probable persuasive effect of the statement on the jury. *Smith v. State*, 140 N.E.3d 363, 373 (Ind. Ct. App. 2020). Granting a mistrial "is an extreme remedy that is warranted only when no other action can be expected to remedy the situation." *Kemper v. State*, 35 N.E.3d 306, 309 (Ind. Ct. App. 2015), *trans. denied*.

[8] Evidence Rule 404(b) provides, "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." The purpose of Rule 404(b) is "to prevent the jury from indulging in the 'forbidden inference'— that a defendant must be guilty of the charged crime because, on other

occasions, he acted badly." *Fairbanks v. State*, 119 N.E.3d 564, 565 (Ind. 2019). Porter contends Horton's statement that he and Wright "had altercations every now and then" is prior bad act evidence that subjected him to grave peril. Tr., Vol. II at 121. We disagree.

[9] In *Lucio v. State*, a witness was asked how long the defendant and a third party had been acquainted. The witness replied, "As far as I know they had met in Boone County jail." 907 N.E.2d 1008, 1009 (Ind. 2009). Defense counsel immediately moved for a mistrial, arguing the evidence was highly prejudicial. The trial court found the violation was unintentional and denied the mistrial but struck the answer and instructed the jury, "You must not consider that evidence as to any matter before you for consideration. In fact, such matter is to be treated as though you have never heard of it." *Id.* at 1010. The jury found the defendant guilty of two counts of murder and one count of conspiracy to commit murder. The defendant appealed, raising the sole issue of whether the trial court erred in denying his request for a mistrial. Our supreme court noted that "everyone agrees" the witness's testimony was improper. *Id.* However, because the trial court immediately and clearly told the jury not to consider the evidence, because there is a strong presumption that juries follow a court's instructions and that an admonition cures any error, and because the statement "was fleeting, inadvertent, and only a minor part of the evidence against the defendant[,]" the court held the trial court did not abuse its discretion. *Id.* at 1011.

[10] Here, the implication of the statement in question is much less direct than that of the statement in *Lucio*. That Porter and Wright had been involved in "altercations" in the past does not necessarily mean that *Porter* is a bad actor, and the possible prejudice from such a vague statement is substantially less than from the direct statement in *Lucio* which was still not prejudicial enough to warrant a mistrial. *See Greenlee v. State*, 655 N.E.2d 488, 489-91 (Ind. 1995) (holding mistrial not warranted where trial court instructed jury to disregard witness's testimony that he was familiar with the defendant because he "had arrested him in the past"). In addition, all parties here agreed that Horton's statement was not elicited purposely – both the trial court and Porter's counsel noted that the State's question did not beg the answer. Moreover, the trial court noted that because the witness spoke quickly, the court barely registered her answer and it was likely the same for the jury. Finally, the trial court immediately gave a clear instruction to the jury that it should not consider the statement. When a trial court adequately admonishes the jury, such admonishment is presumed to cure any error that may have occurred. *Cherry v. State*, 971 N.E.2d 726, 733 (Ind. Ct. App. 2012), *trans. denied*.

[11] Wright's testimony alone that Porter struck her and took her from one place to another when she did not wish to go was substantial. In light of that evidence, it is likely the jury would have returned guilty verdicts regardless of Horton's statement. Horton's inadvertent mistake in referencing prior altercations was brief, was not used by the State thereafter in any manner, and was presumably cured by the trial court's admonishment to the jury. The trial court did not

abuse its discretion in denying the extreme remedy of a mistrial under these circumstances.

## II. Double Jeopardy

Porter also contends his convictions and sentences for kidnapping committed by using a vehicle and kidnapping causing bodily injury cannot both stand, as the two convictions violate Indiana's prohibition on double jeopardy. The State concedes the two convictions are based upon the same act. *See* Brief of Appellee at 8.

Both counts of kidnapping alleged that Porter knowingly removed Wright by force or threat of force from one place to another, that being from an area near Horton's apartment to Porter's residence. *See* Appellant's Appendix, Volume II at 22. The additional elements of using a car and causing bodily injury are alternative means by which the basic charge of kidnapping, a Level 6 felony, can be elevated to a Level 5 felony. Ind. Code § 35-42-3-2(a) (basic elements of kidnapping); -2(b)(1) (elements that increase the seriousness of the basic crime). But the act of kidnapping itself is simply the removal by force of a person from one place to another. Conviction and punishment for a crime which consists of the very same act as another crime for which the defendant has been convicted and punished is a double jeopardy violation. *Guyton v. State*, 771 N.E.2d 1141, 1143 (Ind. 2002).

When two convictions are found to violate the principles of double jeopardy, we may remedy the violation by reducing either conviction to a less serious

form of the same offense if doing so will eliminate the violation. *Richardson v. State*, 717 N.E.2d 32, 54 (Ind. 1999). If it will not, then the conviction with less severe penal consequences should be vacated. *Id.* Even though there is a less serious form of kidnapping, given the facts of this case, reducing either conviction to a Level 6 felony would not remedy the double jeopardy violation. Therefore, one conviction must be vacated. However, both crimes are Level 5 felonies and therefore, of equal severity when considering the class of crime. In such case, the severity of the penal consequences can be determined by the length of the sentence imposed. *Moala v. State*, 969 N.E.2d 1061, 1066 (Ind. Ct. App. 2012); *see also Richardson*, 717 N.E.2d at 54 (in remedying a double jeopardy violation, the reviewing court should be "mindful of the penal consequences that the trial court found appropriate.") Because the trial court sentenced Porter to three years for kidnapping by using a vehicle and only one and one-half years for kidnapping causing bodily injury, we remand for the trial court to vacate Porter's conviction for kidnapping causing bodily injury. As a practical matter, because the trial court ordered all of Porter's sentences to be served concurrently, the length of his sentence will not change.[1]

---

[1] Although not raised by either party, we note that the sentencing order states that Porter was convicted of domestic battery as a Level 6 felony. However, the jury found him guilty of domestic battery as a Class A misdemeanor, and the State dismissed the second part of the domestic battery information that could have elevated the crime to a Level 6 felony. *See* Tr., Vol. II at 177 (the State confirming at the sentencing hearing that it did not proceed on part two of the information for domestic battery). Because the trial court sentenced Porter within the bounds of a Class A misdemeanor conviction, *see* Ind. Code § 35-50-3-2 (stating a person who commits a Class A misdemeanor shall be imprisoned for a term of not more than one year), we assume this is a scrivener's error and we instruct the trial court on remand to amend the sentencing order to reflect the appropriate conviction.

# Conclusion

The trial court did not abuse its discretion in denying Porter's motion for mistrial based on an inadvertent and unsolicited statement by a witness. However, Porter's convictions for both kidnapping by using a vehicle and kidnapping causing bodily injury violate Indiana's prohibition against double jeopardy as both convictions are based on the same act. We therefore remand to the trial court to vacate Porter's conviction and sentence for kidnapping causing bodily injury and issue a new sentencing order. In all other respects, the judgment of the trial court is affirmed.

Affirmed in part, reversed in part, and remanded.

Bradford, C.J., and Altice, J., concur.